# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JERRY SILVERSTEIN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 19-cv-735-KD-N |
| | ) |
| WEATHER SHIELD MFG., INC., | ) |
| | ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

This action is before the Court on the Motion to Remand (Doc. 8) filed by Plaintiff Jerry Silverstein ("Silverstein"), to which the Defendant Weather Shield Mfg., Inc. ("Weather Shield") has filed a response in opposition (Doc. 13) and Silverstein filed a reply. (Doc. 14). This matter is now ripe for consideration and has been referred to the undersigned Magistrate Judge for entry of a report and recommendation under 28 U.S.C. § 636(b)(1)(B)-(C) and Federal Rule of Civil Procedure 72(b). Upon consideration of the motion, response and reply, and for the reasons stated herein, the undersigned **RECOMMENDS** that Silverstein's Motion to Remand (Doc. 8) be **DENIED**.

### I.    Procedural History

On June 27, 2018, the parties entered into a Settlement Agreement in the previously filed suit styled *Jerry Silverstein v. Weather Shield Mfg., Inc.*, United States District Court, Southern District of Alabama, Southern Division, Case

1

Number 1:17-cv-00012. [1] Under the terms of the settlement, Weather Shield agreed to pay a monetary amount to Silverstein, and the parties also agreed that Weather Shield would replace all of the windows in the home, but would not be responsible for the replacement of the doors. (Doc. 8 at 2). In January 2019, Weather Shield began work on Silverstein's home pursuant to the agreement. On February 18, 2019, Weather Shield classified eight (8) windows in the home as "fixed doors" or "stationary French doors". Silverstein contested the classification of the "windows" as "fixed doors" and maintained that Weather Shield was responsible for the repair of the eight windows pursuant to the Settlement Agreement.

In response to the dispute, Silverstein filed suit in the Circuit Court of Mobile County, Alabama and on April 16, 2019, Weather Shield removed the matter to this Court arguing original jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b).[2] On August 12, 2019, this Court remanded the case back to state court, holding that the amount-in-controversy did not exceed the jurisdictional requirement and that at removal, the damages were valued at $30,762.34. Subsequently, on September 14, 2019, Silverstein filed an amended complaint in the Circuit Court of Mobile County, alleging breach of settlement

---

[1] Prior to trial, the parties reached a settlement ("settlement agreement"). (Doc. 1-1 at 18). Pursuant to the terms of the agreement, Weather Shield agreed to pay $61,900.00 and replace all of the windows and window sashes at Silverstein's home. (Doc. 1-1 at 20). Weather Shield paid the amount and commenced work on the house. After some work was completed, Weather Shield claimed that eight windows on the house were considered "fixed doors" and ceased repair. Silverstein alleges, in sum, that Weather Shield failed to honor that settlement agreement. *Jerry Silverstein v. Weather Shield Mfg., Inc.,* United States District Court, Southern District of Alabama, Southern Division, Case Number 1:19-cv-00195-KD-N (Doc. 14).

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost, and is between citizens of different states." 28 U.S.C. §1332(a).

agreement, fraud in the inducement, unjust enrichment and breach of contract for installation of the windows and doors in his home at 4100 Crossway, Mobile, Alabama 36608. (Doc. 1). The amended complaint further alleged that Weather Shield "breached the lifetime warranty in the installation of the windows and doors in his home," when it was subject "to extensive rot as a result of Weather Shield's inferior product."(Doc. 1-1 at 2). Although Silverstein seeks to recover for material breach of contract, he does not demand a specific sum in the amended complaint.

On October 1, 2019, Weather Shield timely filed a notice of removal for the civil action entitled *Jerry Silverstein v. Weather Shield Mfg., Inc.*, Case No. 02-CV-2094-900737.00 in the Circuit Court of Mobile County, Alabama pursuant to § 1441(a), and pursuant to 28 U.S.C. § 1332(a), which provides that the district courts have original jurisdiction of civil actions between citizens of different states where, the amount in controversy exceeds $75,000, exclusive of interest and costs.[3,4,5] Specifically, Weather Shield maintains that removal is proper because the amended Complaint seeks damages relating to the "alleged material breach of a settlement entered in response to a lawsuit that was filed in this Federal Court." (Doc. 1). In response, Silverstein maintains that the filing fee paid in the Circuit Court of Mobile County indicates that

---

[3] 28 U.S.C.A §1441(a), "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

[4] Weather Shield is a Wisconsin corporation with its principal place of business in Wisconsin. Silverstein is a resident of Alabama.

[5] Weather Shields maintains that "[b]ased on the allegations of the Amended Complaint, the requisite amount in controversy is satisfied as the Plaintiff alleges that he has incurred 'compensatory damages, special damages, consequential damages, specific performance, attorneys' fees, expenses…' associated with the alleged breach of the settlement agreement." (Doc. 1 at 3)

he does not anticipate damages exceeding $50,000.

Specifically, at issue in the instant case, is the previously discussed repair and replacement of the eight windows; the repair and replacement of six window units; the repair and replacement of two oval windows; and the completion of the replacement of the window stash and grills. In sum, Weather Shield argues that it is feasible for the damages asserted in Silverstein's amended complaint to exceed the jurisdictional required amount.

## II. <u>Applicable Legal Standards</u>

After a plaintiff files a civil action in a state court over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant may remove the action to federal court, provided that no defendant is a citizen of the state in which action was brought. 28 U.S.C.A §1441(a), *See also Caterpillar Inc. v. Lewis*, 117 S.Ct 467 (1196). "Federal diversity jurisdiction requires both complete diversity and satisfaction of the requisite amount in controversy, and a case does not become removable until both conditions are present." 28 U.S.C.A. §§ 1332(a), 1446(b). "A state court defendant may remove a case to federal court at two procedurally distinct moments in time: (1) if it is facially apparent from the initial pleading that subject matter jurisdiction exists, removal must be accomplished within 30 days after the receipt by the defendant of a copy of the initial pleading setting forth the claim for relief upon which such action is based, and (2) if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an

amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C.A. § 1446(b), *See also Exum v. State Farm Fire and Cas. Co.*, 821 F.Supp.2d 1285 (M.D.Ala. 2011).

Upon removal, the removing party "bears the burden of proving that federal jurisdiction exists." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "Just as a plaintiff bringing an original action is bound to assert jurisdictional bases under Rule 8(a), a removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under 28 U.S.C. A §1446(a)." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1216-17 (11th Cir. 2007). "In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 n. 4 (11th Cir.1998) (citing *Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1373 (11th Cir.1998)).

"Where the complaint alleges unspecified damages, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 752 (11th Cir.2010); *Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1207 (11th Cir.2007); *see also Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356–57 (11th Cir.1996) ( "[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy *more likely than not* exceeds the jurisdictional requirement." (emphasis added)), *overruled on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069,

1072 (11th Cir.2000). Therefore, Weather Shield bears "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287(11th Cir. 1998).

In the event that the plaintiff does contest the defendant's allegations, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 28 U.C.S.A. §1446(c)(2)(B), *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 549 (2014). "All doubts [and uncertainties] about federal court jurisdiction must be resolved in favor of a remand to state court." *Seroyer v. Pfizer, Inc.*, 991 F.Supp. 1308, 1312 (M.D.Ala. 1997). "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka,* 608 F.3d at 751; *see also Burns v. Windsor Ins. Co.,*31 F.3d 1092 (11th Cir. 1994). Thus, "events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction." *Poore v. Am.-Amicable Life Ins. Co. of Tx.,* 218 F.3d at 1287, 1290–91 (11th Cir.2000). "Courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* at 1062. "In sum, as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554.

## III. Analysis

In support of removal, Weather Shield calculates that the amount-in-controversy will exceed the sum of $75,000 and estimates $93,596.88 in compensatory damages.[6] (Doc. 1). Silverstein argues that Weather Shield uses misleading information to support the new calculation and only offers "confusing" exhibits that are not supported by affidavits. (Doc. 8 at 4). Silverstein contends that Weather Shield "failed to provide competent evidence of the amount in controversy, failed to provide an affidavit of the amount in controversy, and failed to prove the amount in controversy by a preponderance of the evidence." (Doc. 8 at 8-9).

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C.§1446(a), *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S.Ct. 547, 549 (2014). In *Dart*, the issue before the court was whether it was sufficient to allege the amount in controversy plausibly or was evidence necessary in the notice of removal to support the allegation. The court held that a notice of removal did not need to contain evidentiary submissions. The court reasoned that "evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests or the court questions, the defendant's allegations." *Id.* at 554. Additionally, the Supreme Court maintained that during dispute, "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Id.* at 554.

---

[6] In the filed response, Weather Shield offers an additional calculation and contends that "the product costs and labor are approximately $97,000 as detailed in Exhibit 'A'". (Doc. 13 at 3).

7

"While post-removal evidence is permissible, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time; put another way, the court may consider information submitted after the case has been removed only if it informs its determination of whether subject matter jurisdiction existed at the time of removal." 28 U.S.C.A. §§ 1332(a), 1446(b), *Exum v. State Farm Fire and Cas. Co.*, 821 F.Supp.2d 1285,1287 (M.D.Ala.2011). In *Exum*, plaintiffs' complaint contained an unspecified amount of compensatory and punitive damages, leaving defendants unable to establish whether the amount in controversy was sufficient to support subject matter jurisdiction in federal court. It wasn't until a deposition, that the plaintiff testified that his home only sold for $175,000 as opposed to $375,000 due to a damaged boat dock. The deposition testimony established the expected damages and defendants timely filed notice of removal. In response, plaintiff timely filed a motion to remand arguing that defendants failed to satisfy the jurisdictional requirement and in support of the motion to remand, plaintiffs included a joint affidavit regarding limitations on their damages.[7] The court did not consider the post-removal affidavit, reasoning that there was no relevance to the issues before the court and that plaintiff's "unambiguous statement" concerning the value of the home highlighted the expected damages. *Exum*, 821 F.Supp.2d 1285, 1294.

Weather Shield submits an invoice reporting that the cost and labor of the

---

[7] In the filed affidavit, Plaintiffs agreed to stipulate that they would enter into an irrevocable agreement to limit the damages in the action to $74,000. *Exum v. State Farm Fire and Cas. Co.*, 821 F.Supp.2d 1285 (M.D.Ala.2011).

eight windows is approximately $34,000.[8] (Doc. 13 at 3). Although Silverstein maintains that the numbers are "unsupported and speculative," Silverstein does not present evidence that refutes the amount presented. Attached to its response, Weather Shield submits a post-removal affidavit listed as "Exhibit 'A'", from its General Counsel and HR Manager, Brandon Brunner, Esq., "Brunner". (Doc. 13-1). Brunner's affidavit in part provides,

> I disagree that we are required to replace these stationary French doors. However, I have received a quote to repair and replace the 8 stationary French doors at Mr. Silverstein's home for approximately $34,000, inclusive of labor and $18,762.34 in product costs, see attached Exhibit "A".
>
> Mr. Silverstein is also demanding we repair and replace 6 complete window units, which have extensive water and rot damage, at his home. The costs for the window units is valued at $11,230.00. I have also received a quote to perform the repairs to the water and rot damage to the framing values at $17,500.00. See attached Exhibit "B".
>
> Before Mr. Silverstein breached the Settlement Agreement, he personally requested and we agreed to replace the oval windows in his home with a product he found at Blue Water Lumber. The cost for us to purchase these windows is $4,126.88. See attached Exhibit "C".

Unlike *Exum*, Brunner's relevant affidavit in combination with the exhibits submitted with the notice of removal, offers clarification.[9] ("District courts in the Eleventh Circuit characterize a post-removal amount-in-controversy stipulation as a clarification permitted by *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283

---

[8] "Fixed doors", a term that Silverstein maintains that Weather Shields created, "refers to panes of wood and glass, for which there is no handle or hinges, which do not open, which are narrow, and which are in positions in the house where no door would logically be, including a bay of windows in the breakfast area." (Doc. 1-1 at 3)

[9] The law is clear that post-removal affidavits "are properly weighed where they shed light on the amount in controversy at the time of removal." *Land Clearing Co., LLC v. Navistar, Inc.*, Civil Action No. 11-0645-WS-M, 2012 WL 206171, at *3 (S.D.Ala. Jan. 24, 2012).

(1938), rather than an amendment or post-removal action forbidden by the Supreme Court in St. Paul." *Brantley v. Bassett*, No. 11-591, 2011 WL 6288119 at *2 (S.D.Ala. Nov. 29, 2011)).

After review of Weather Shield's invoice ("Quote #2188622), which explains the quote and value of the eight windows, the amount of $18,762.34 is properly considered in establishing the amount in controversy. (Doc. 1-2 at 1). As to the cost of labor to install the eight windows, Weather Shield does not submit a labor invoice elaborating on the remaining estimated figure. However, the Court notes that Weather Shield's calculation is the same calculation asserted in the previously filed suit *Jerry Silverstein v. Weather Shield Mfg., Inc.,* United States District Court, Southern District of Alabama, Case Number 1:19-cv-00195-KD-N .[10]

Next, Brunner attests that the cost of the six window units is $11,230.00 and to replace the rot damage to the framing is valued at $17,500.00. Weather Shield submits an invoice (Quote #2256720") as to the 6 windows, which details the quantity and classifications of the windows and explains the total of $11,230. (Doc. 13-1 at 8-15). As to the labor invoice ("Estimate #1072"), $17,500 is listed as "Hotel and Travel" and the description reads:

> R & R Casement windows- Repair/Rebuild damaged walls due to water infiltration- Repair stucco- R & R Damaged drywall- Hang float, Finish around windows- R $ R Interior trim- Paint interior of Windows, Interior trim and drywall original color and sheen- all materials and labor excluding cost of windows. (Doc. 13-1 at 7).

---

[10] Weather Shield maintains that, "the costs associated with the doors [fixed doors] … exceeds the jurisdictional numbers as the products themselves cost approximately $18,762.34… exclusive of the installation costs which are estimated in the $15,000.00 range." *Silverstein v. Weather Shield*, 19-cv-195, (Doc. 10 at 3).

Thus, the amount of $28,730 is properly considered in establishing the amount in controversy.

As previously stated, "when a defendant's assertion of the amount in controversy is challenged, both sides submit proof and the court decides…" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 550 (2014). Silverstein maintains that Weather Shield fraudulently represented that they would replace the oval windows. In response, Weather Shield submits a quote from Blue Water Lumber containing the detail pricing and cost of said windows, which are valued at $4,126.88. In the affidavit, Brunner declares that Silverstein personally requested the oval windows from Blue Water Lumber. (Doc. 13-1 at 2). Although Silverstein contests the cost of the oval windows, he submits no proof challenging the value of the windows. Therefore, the estimated balance of $4,126.88 should be included in the amount in controversy calculation.

Comparably, the same is provided for the replacement of the window sashes and grills. Silverstein maintains that Weather Shield failed to finish the mullions[11] on several sashes and installed a damaged window. Weather Shield estimates $30,000 in remaining work to be completed as to the window sashes subject to the settlement agreement. In the submitted affidavit, Brunner reports that,

> In addition to the above, the original contract with our subcontractor for the work being undertaken at Mr. Silverstein's home was estimated at $72,000. To date, we have personally paid $41,253.67 to replace the window sash. There is approximately $30,000 worth of work outstanding that is separate from the work described in the above paragraphs.

---

[11] A mullion is described as a vertical bar between the panes of glass in a window.

11

After review of invoice #1017, it reports a $31,253.67 balance. In calculating the figures, the balance amounts to $41,253.67 with $10,000 (described as advanced payment) subtracted, leaving a balance of $31,253.67. (Doc. 1-5 at 1). In the previous suit styled *Jerry Silverstein v. Weather Shield Mfg., Inc.,* United States District Court, Southern District of Alabama, Southern Division, Case Number 1:19-cv-00195-KD-N, Silverstein did not dispute the same calculation presented by Weather Shield.[12] In fact, the remaining estimated balance of $30,746.33 was calculated for attaining the amount-of-controversy for the previously filed case. The Court also notes that Silverstein does not offer a reply, stating, "Plaintiff has nothing to further add in addition to the Plaintiff's Motion to Remand filed…"(Doc. 14 at 1).[13] It is a plausible assertion that the remaining repair of the window sashes amount to $30,000. Therefore, the remaining estimated balance of $30,746.33 is rightfully calculated for attaining the amount in controversy. Therefore, the undersigned concludes that Weather Shield has demonstrated that the damages are valued at that $97,603.21, thus satisfying the amount-in-controversy requirement.

## IV. Conclusion

In accordance with the foregoing analysis, it is **RECOMMENDED** that Silverstein's Motion to Remand (Doc. 8) be **DENIED**.

---

[12] "As for the $72,000 cost to install the windows and sashes, Silverstein is not in a position to say how much work is left or the cost of it, but taking Weather Shield's stated facts as true, there is only $30,000 worth of installation work left that Weather Shield has agreed to complete." 19-cv-195-KD-N (Doc. 11 at 4).

[13] The Court notes that in response, Weather Shield requested that "the parties be allowed to conduct limited jurisdictional discovery to confirm the amount in controversy," however the undersigned finds that jurisdiction is proper. (Doc. 13 at 4). The Court also notes that Silverstein did not offer a response to the request.

## V. Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); SD ALA LR 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 1st day of July 2020.

>*/s/ Katherine P. Nelson*
>**KATHERINE P. NELSON**
>**UNITED STATES MAGISTRATE JUDGE**